Martha B. Ratliff v. Commissioner
Ratliff v. Commissioner
Docket No. 12126.
United States Tax Court
1947 Tax Ct. Memo LEXIS 60; 6 T.C.M. (CCH) 1103; T.C.M. (RIA) 47289; October 13, 1947
*60 Petitioner was the owner in 1943 of a well improved parcel of real estate in Cincinnati, Ohio which for a good many years she had used as a private residence. Early in 1942 she abandoned it as a private residence and placed it for sale or rent with her regular real estate broker who advertised it as such. The property was rented in September, 1942 for a period of one year with an option to the lessee to purchase for $35,000. The property had a fair market value of $35,000 on the date it was leased. In the fall of 1943 the petitioner refused to further renew the lease and after considerable negotiations with the lessee, sold it to the lessee for $25,000. Held, petitioner is entitled to take as a deduction, the loss which she incurred by reason of the sale, under the applicable statute and regulation. Edwin Vosburgh, 23 B.T.A. 780, followed. Frank E. Wood, Jr., Esq., Frank E. Wood, Esq., and Robert S. Marx, Esq., 900 Traction Bldg., Cincinnati, Ohio, for the petitioner. A. J. Friedman, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined a deficiency in petitioner's income tax for the year, 1943 of $8,453.03. This deficiency is due to one adjustment made to the net income of $71,866.37 disclosed by the return of petitioner filed for the taxable year. That adjustment was the disallowance of a loss of $10,505.80 claimed by petitioner as a deduction on her income tax return. The Commissioner explained the adjustment in his deficiency notice as follows: "(a) It is held that the loss of $10,505.80 claimed to have been sustained *62 from sale of property known as No. 922 Marion Avenue, Cincinnati, Ohio does not constitute an allowable deduction in accordance with the provisions of either section 23 (e) or 23 (g) of the Internal Revenue Code." Petitioner by an appropriate assignment of error contests the correctness of this determination of the Commissioner. This presents the only isue we have for our decision in this case. Findings of Fact The petitioner is an individual residing in Cincinnati, Ohio. The return for the period here involved was filed with the collector for the first district of Ohio. During the year, 1943, the petitioner was the owner of a certain improved parcel of real estate located in the city of Cincinnati, Ohio, which she sold in that year. The property in question consists of a large residence and garage situated on a lot fronting approximately 347 feet on the north side of Marion Avenue, by approximately 253 feet along the west line of Dakota Avenue in Avondale, a suburb of Cincinnati, Ohio. The irregular tract contains slightly over two acres of land. The neighborhood in which the lot is situated was developed in the early 1900,s and has fairly well maintained *63 the high standard for which it was originally planned. The property is very near Xavier University, a Jesuit College with a normal enrollment of approximately 600 students. On the property is situated a very large residence, together with an elaborate garage. The first story of the residence is constructed of stone, the second of brick and the third is finished in terra cotta. The floors throughout the building are oak of very fine quality and the interior wood work is oak, mahogany and maple. At the time it was built it was one of the most expensively constructed residences in that particular section of the city. It contains 18 rooms, in addition to servants' quarters on the third floor. With respect to the interior arrangement, in addition to the usual facilities, there are three tile baths on the second floor together with a glassed-in sleeping porch. The walls of the living room and study are lined with mahogany book cases and the dining room has a beamed ceiling. The kitchen has a marble wainscot and is equipped with two separate refrigerator rooms with built-in mechanical refrigerator units. The basement is equipped with a laundry and storage rooms, recreation room and two *64 bowling alleys. The first floor is heated by a gasfired hot air furnace, while the second floor is heated by a separate gas-fired hot water system. The garage is a structure of considerable size. The first floor contains space for several automobiles and the second floor, entirely sealed in wood, contains storage space and in addition, a three-room furnished apartment complete with bath and toilet. The entire garage building is heated by a separate gas-fired hot water system. The property was constructed about 1905 by one of the best known and highly regarded builders in Cincinnati. On two sides the lot is surrounded by an eight foot high iron picket fence and is nicely landscaped throughout. The petitioner purchased this property for residential use in 1919 when she was Mrs. Richardson. Later her husband died. Still later she married her present husband, Dr. Ratliff. She and Dr. Ratliff lived in the property until early in 1942 when they moved out and Mrs. Ratliff authorized the Robert A. Cline Company, real estate dealers, to put the property on the market for sale. In April of that year the Cline Company put both "For Sale" and "For Rent" signs on it, showed it to prospective *65 clients, and listed it in the ordinary manner. It was visited by several prospective purchasers but it was not sold at that time. During the summer of 1942 the Cline Company received a call from Father Celestin Steiner, S. J., president of Xavier University, and as a result, Father Steiner made a physical inspection of the property with an employee of the Cline Company. At that time the facilities of Xavier University were being severely overtaxed by various war training programs and Father Steiner wished to rent the property to house the overflow. Father Steiner wanted to lease the property and did not desire to buy it. Since the taxes and insurance were heavy charges, and since no purchaser was in sight, petitioner, desiring to get some return out of the property, acceded to The Cline Company's recommendation that a lease be granted to Xavier University for a period of only one year, at a rental of $150 per month. This lease was executed on September 5, 1942; it did not include the garage. Prior to the lease, in May, 1942, the Cline Company had appraised the property for purposes of sale, at $35,000. Another appraisal was made at the time the property was leased and the same *66 figure was arrived at. The basis of these appraisals was the Cline Company's estimate of what they could sell the property for at that time, and on the basis of these appraisals, a privilege of purchase by the lessee at $35,000 was inserted in the lease. In 1937 and thereafter to and including the year of lease the property was carried on the Hmilton County tax duplicate at $22,150 for the land and $35,490 for the buildings. The property in question had a fair market value of $35,000 at the time of the execution of the lease, September 5, 1942. The university used the property as housing for the faculty and for sixty students. Although no drastic changes were made in the internal arrangement of the house, the university added a partition or two on the third floor and converted one of the lower rooms into a chapel. During the period of the lease there was the customary wear and tear which ordinarily results from occupancy by a large number of people. About sixty days before the lease expired, petitioner was informed by Father Steiner that he would be unable to give up his occupancy. The enrollment of the university at that time was about twice what it was originally. Because the *67 occupancy by the university was directly connected with the war effort, the petitioner considered that as a practical matter she could not evict the priests and the G.I.'s, and in addition, it was under these circumstances well nigh impossible for her to show the property to prospective purchasers. The petitioner was unwilling to renew the lease and refused to do so but rather desired to sell the property, and Father Steiner, after consideration, made an offer for the University of $20,000. The sale was eventually consummated late in 1943 at $25,000. In computing her loss on this sale for the purpose of her 1943 income tax return the petitioner used a fair market value of $35,000 on the date she rented the property in 1942, as cost and after certain adjustments, the correctness of which was not in dispute showed a loss on the transaction of $10,505.80. This loss, as has already been explained, the Commissioner disallowed and by reason thereof determined a deficiency in petitioner's income tax of $8,453.03. Opinion BLACK, Judge: The Commissioner in his deficiency notice did not explain in detail why he disallowed the claimed loss of $10,505.80 which petitioner had claimed as a *68 deduction on her income tax return filed for the year 1943. However, at the hearing respondent's counsel stated that the Commissioner conceded that in 1942 when petitioner leased the premises in question to Xavier University that it was thereupon converted into property used for business purposes and was no longer to be classed as petitioner's private residence. Both petitioner's counsel and respondent's counsel made plain in their opening statements at the hearing that the main issue was as to the fair market value of the property on September 5, 1942, when it was leased by petitioner to Xavier University. Petitioner contends the property had a fair market value on that date of $35,000, whereas the Commissioner contends it only had a fair market value of $25,000. The amount of petitioner's loss if we should hold that the property in question had a fair market value of $35,000 on September 5, 1942, is not contested by the Commissioner. Both parties agree that the applicable regulation is Sec. 29.23(e)-1, Regulations 111. [1]
*69 It seems to us that petitioner has borne the burden of proof which the law imposes upon her to overturn the correctness of the Commissioner's determination. Two real estate men of Cincinnati who seemed to be well experienced and reputable in their field of activity testified for petitioner at the hearing. One of them, C. D. McClanahan, testified that the property had a fair market value of $35,000 September 5, 1942, and the other, Sylvester F. Osterbrink, testified that the property had a fair market value of $40,000 on such date. Each of these witnesses testified that he had fixed his valuation after a careful appraisal of the property. Details of their respective appraisals were narrated by these two witnesses but we do not deem it necessary to go at length into these details in this opinion. Also it was proved that the property since 1937 has been carried on the tax rolls of the State and County at $57,640 - $22,150 for the land and $35,490 for the buildings. To be sure these latter figures are not conclusive as to value but certainly they indicate that the figures of valuation fixed by the two real estate appraisers were on the conservative side. Photographs of the ground and *70 buildings as of the basic date were introduced in evidence and show that the property was well kept, in excellent condition and a very imposing piece of property. From all the evidence we are well convinced that the property in question had a fair market value of $35,000 on the basic date and we have so found in our findings of fact. Respondent offered no witnesses as to valuation but argues strongly that because the property sold late in 1943 for $25,000 we should find that it had no larger fair market value than that on September 5, 1942, when it was leased to Xavier University. We are unwilling to make such a finding in view of the evidence which we have before us. It seems clear to us from all the evidence which we have before us that Xavier University made a bargain purchase in 1943 and that petitioner incurred a loss in the transaction which she is entitled to have allowed as a deduction under the applicable statute and regulation. See Edwin Vosburgh, 23 B.T.A. 780 and Plant v. Walsh, 43 Fed. (2d) 256, 9 AFTR 49. Decision will be entered for the petitioner. Footnotes
1. Sec. 29.23(e)-1. Losses by Individuals. - Losses sustained by individual citizens or residents of the United States and not compensated for by insurance or otherwise are fully deductible if (a) incurred in the taxpayer's trade or business, or (b) incurred in any transaction entered into for profit, * * *
A loss on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible. If, however, property so purchased or constructed is prior to its sale rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss from the sale of the property, computed as provided in section 111, is, subject to the limitations provided in section 117, an allowable deduction in an amount not to exceed the excess of the value of the property at the time it was appropriated to income-producing purposes (with proper adjustment for depreciation) over the amount realized from the sale.↩